372 A.2d 797

**COMMONWEALTH of Pennsylvania**

v.

**Barry SMITH Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Jan. 10, 1977.

Decided April 28, 1977.

494

Victor J. DiNubile, Jr., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Gold-blatt, Asst. Dist. Atty., Chief, Appeals Div., Deborah E. Glass, Asst. Dist. Atty., for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

### OPINION OF THE COURT

NIX, Justice.

This appeal again raises the troublesome issue as to when an accused under the age of 18 years may effec-

tively waive his constitutional rights prior to custodial interrogation.[1] For the reasons set forth hereinafter we are constrained to reverse the judgments of sentence and award the grant of a new trial.

On November 7, 1974, appellant, Barry Smith, a 17-year-old youth, fired six shots in the direction of another youth who was a member of a rival gang. The bullets missed the intended victim and struck Crystal Loney and Batina Brooks, two innocent bystanders, who were in the vicinity at the time of the shooting. Crystal, who was age 14 at the time of the shooting, died from a gunshot wound to the head several hours later. Although Batina was shot in the arm and head she fortunately recovered. Appellant was subsequently arrested, tried and convicted of murder of the first degree, possession of an instrument of crime, and carrying a firearm on public streets. Following a denial of post-trial motions, Smith was sentenced to life imprisonment under the murder indictment and received a sentence of one to two years for each of the weapon charges, both to run concurrently with the life sentence. This direct appeal followed.[2]

Appellant argues that the inculpatory statement elicited during custodial interrogation following his arrest should have been suppressed because the record does not reflect an effective waiver of his *Miranda* [3] rights. After an analysis of this Court's recent cases relating to ju-

1. Appellant has also raised constitutional objections as to the imposition of a life sentence for a minor upon a conviction of murder of the first degree. In view of our disposition we need not consider or attempt to resolve this issue.

2. Jurisdiction of the murder conviction is pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1976–77). The weapons convictions were appealed to the Superior Court and certified to this Court for consolidation and consideration.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

venile waivers prior to custodial interrogation, the trial judge concluded:

"Under the guidelines of state and federal appellate cases, the likelihood that a young defendant did not understand the import and consequences of his confession does not warrant the exclusion of the statement where all the proprieties have been observed. *This Court has grave misgivings that Barry Smith or any other juvenile of similar age, I.Q. and background, could knowingly, intelligently and competently waive his constitutional rights. However, all of the formal due process requirements were observed.* Under the law in Pennsylvania at the time of this writing, there is no authority to exclude the statement." (Emphasis added).

■■ Before turning to the merits of this appeal, we deem it necessary to comment upon the above-quoted observation of the trial court since, in our judgment, it touches upon the heart of the controlling considerations involving waiver of substantial constitutional rights. In our view, due process requires that a waiver by a youthful offender is effectuated only when it has been shown that the minor *comprehended* the full significance of the panoply of rights that protects him during custodial interrogation. We have insisted that the Commonwealth bear the burden of proving a knowing waiver. *Commonwealth v. Hailey*, 470 Pa. 487, 368 A.2d 1261 (filed January 28, 1977); *Commonwealth v. Webster*, 466 Pa. 314, 353 A.2d 372 (1976); *Commonwealth v. Smith*, 465 Pa. 310, 350 A.2d 410 (1975); *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975); *Commonwealth v. Starkes*, 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974). In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), the United States Supreme Court in

setting forth the required procedures for police interrogation of suspects warned:

> The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation.

*Id.* at 476, 86 S.Ct. at 1629.[4]

■ We cannot accept the implication of the trial judge's statement, that the inquiry as to the effectiveness of the waiver of a minor is satisfied because the formal prerequisites have been met, as long as there is reason to question whether the minor, *in fact,* has comprehended his situation.

We have devoted special attention to the observation of the learned trial judge because her concern capsulizes that which motivated a majority of this Court to seek a technique which would avoid the warning of a juvenile becoming a mere ritual wherein the effect of actual comprehension is ignored. Because of the unique disadvantage in the custodial interrogation process of the youthful accused due to his immaturity,[5] it was recognized that merely a consideration of the fact of youth in the totality of the circumstances formulation, *Commonwealth v.*

---

4. The thrust in *Miranda* was directed to the adult suspect. Obviously our need for scrutiny to be certain that the subject fully comprehends his rights is increased where the court is considering the waiver of an immature suspect.

5. "[The juvenile defendant] cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions. He would have no way of knowing what the consequences of his confession were without advice as to his rights—from someone concerned with securing him those rights—and without the aid of more mature judgment as to the steps he should take in the predicament in which he found himself. A lawyer or an adult relative or friend could have given the petitioner the protection which his own immaturity could not. Adult advice would have put him on a less unequal footing with his interrogators.
*Gallegos v. Colorado,* 370 U.S. 49, 54–55, 82 S.Ct. 1209, 1212, 8 L.Ed.2d 325 (1962).

*Fogan,* 449 Pa. 552, 296 A.2d 755 (1972); *Commonwealth v. Taylor,* 449 Pa. 345, 296 A.2d 823 (1972); *Commonwealth v. Moses,* 446 Pa. 350, 287 A.2d 131 (1971); *Commonwealth v. Darden,* 441 Pa. 41, 271 A.2d 257 (1970); *Commonwealth v. Taper,* 434 Pa. 71, 253 A.2d 90 (1969), was inadequate to insure that a juvenile's waiver was indeed a knowing one.

In a series of our decisions beginning with *Commonwealth v. Roane, supra,*[6] we announced that the administering of *Miranda* warnings to a juvenile, without providing an opportunity to that juvenile to consult with a mature, informed individual concerned primarily with the interest of the juvenile, was inadequate to offset the disadvantage occasioned by his youth. The new rule appreciates that the inexperience of the minor affects not only his or her ability to understand the full implication and consequences of the predicament but also renders the judgment inadequate to assess the spectrum of considerations encompassed in the waiver decision.[7] It was therefore reasoned that the impediment of immaturity can only be overcome where the record establishes that the youth had access to the advice of an attorney, parent, or other interested adult and that the consulted adult was informed as to the constitutional rights available to the

6. *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975); *Commonwealth v. Riggs,* 465 Pa. 208, 348 A.2d 429 (1975); *Commonwealth v. Smith,* 465 Pa. 310, 350 A.2d 410 (1976); *Commonwealth v. Chaney,* 465 Pa. 407, 350 A.2d 829 (1975); *Commonwealth v. Stanton,* 466 Pa. 143, 351 A.2d 663 (1976); *Commonwealth v. Webster,* 466 Pa. 314, 353 A.2d 372 (1976); *Commonwealth v. Hailey,* 470 Pa. 487, 368 A.2d 1261 (filed January 28, 1977); *Commonwealth v. Lee,* 470 Pa. 401, 368 A.2d 690 (filed January 1977); *Commonwealth v. Gaskins,* 471 Pa. 238, 369 A.2d 1285 (filed February 28, 1977).

7. *See e. g.,* Ferguson & Douglas, *A Study of Juvenile Waiver,* 7 San Diego L.Rev. 39 (1970); Comment, *The Interrogated Juvenile: Caveat Confessor?,* 24 Hast.L.Rev. 413 (1973). A discussion of these and other authorities on this subject can be found in Comment, *Pennsylvania Supreme Court Review, 1975 (Juvenile Miranda Waiver),* 49 Temp.L.Q. 558, 704 (1976).

minor and aware of the consequences that might follow the election to be made. *See, Commonwealth v. Starkes, supra.*

 Reviewing the facts of the instant appeal, it is apparent that this juvenile did not receive the requisite protections envisioned in our recent case law. The testimony of the suppression hearing established that within hours of the incident appellant became a suspect in the shooting. The police arrived at appellant's home at 4:15 A.M. on November 8, 1974, and were admitted to the premises by appellant's father, Jack Miller. The police and Miller then proceeded to an upstairs bedroom where appellant was awakened and told to dress. At this time Smith was taken into custody and read the first side of the police interrogation card which contained the *Miranda* warnings, but there was no inquiry whether the suspect or his father understood that which had been read to him. Smith was taken downstairs and the police informed Mr. Miller that he could accompany his son to the Police Administration Building, but the father declined to do so.[8]

Appellant arrived at police headquarters and was placed in an interrogation room until 5:30 A.M. when he was again warned. This time the card was read in its entirety and the minor gave monosyllabic responses to the questions which were posed. Smith then proceeded to participate in the interrogation during which he made inculpatory statements which were later reduced to writing. The interviews were concluded by 7:50 A.M.

The Commonwealth contends that because the parent heard the warnings but declined to accompany his son to the police station for questioning, the requirement of

8. At the suppression hearing, Miller testified that he neither attempted to determine his son's whereabouts nor to obtain counsel following the arrest. Instead, he went to work and returned home about 4:35 P.M. in accordance with his usual routine.

providing the accused with the "opportunity for adult consultation" had been met. We disagree.

■ In *Roane*, we first articulated the concept that an attempted waiver of the Fifth and Sixth Amendment rights during custodial interrogation will not be considered as being effective absent a showing that the minor "had access to the advice of a parent, attorney or other adult who was primarily interested in his welfare." *Id.*, 459 Pa. at 394, 329 A.2d at 288. It was never the intention to exclude the requirement of interest simply because the consulting adult was a parent of the minor.[9] To the contrary, it was assumed that the relationship would assure the requisite concern for the welfare of the minor. However, that assumption does not justify the creation of an irrebuttable presumption of interest by a parent. Where, as here, the disinterest of the parent is graphically demonstrated, it is clear that Mr. Miller was not the interested adult envisioned in the rule. If the adult is one who is not concerned with the interest of the minor, the protection sought to be afforded is illusory and the procedure fails to accomplish its purpose of offsetting the disadvantage occasioned by the immaturity.

Not only does Mr. Miller fail to qualify as an adult interested in the welfare of Barry, he also cannot be said, on this record, to have been an informed adult. In *Starkes*, we stated that the record must establish that the consulting adult was aware of the rights possessed by a person in the situation of the accused. If the available adult was as unaware as the suspect himself, then obviously the procedure would be meaningless.

9. It is not clear from the record the exact nature of the relationship between Mr. Miller and Barry Smith. Although he is referred to as the father, it is not clear whether he is the natural father, adoptive father or stepfather. In Mr. Miller's testimony, he merely stated that he was the father and that his wife, Mrs. Miller, was the stepmother. No explanation is given why Barry has a different surname.

Where an informed adult is present the inequality of the position of the accused and police is to some extent neutralized and due process satisfied. However, where the adult is ignorant of the constitutional rights that surround a suspect in a criminal case and exerts his or her influence upon the minor in reaching the decision, it is clear that due process is offended. An uninformed adult present during custodial interrogation presents an even greater liability. The minor in such a situation is given the illusion of protection, but is in fact forced to rely upon one who is incapable of providing the advice and counsel needed in such a situation.

Unless we require police officers to also advise parents, who are in the position to counsel minor suspects during custodial interrogation, we will not only fail to assure the full benefits sought to be attained by this type of counseling but we will also increase the likelihood that the suspect will be misinformed as to his rights.

*Id.* 461 Pa. at 188, 335 A.2d at 703 (footnote omitted).

■ Although the warnings were read to appellant in the presence of Mr. Miller, there was no attempt by the police officers to ascertain whether Mr. Miller had even directed his attention to what was being said, much less whether he understood the significance of the warnings. Where an adult defendant is being advised of his rights, our cases require that the police officials must make a reasonable effort to ascertain that the accused understands the warnings that have been read to him. *Commonwealth v. Bullard*, 465 Pa. 341, 350 A.2d 797 (1976); *Commonwealth v. Ritter*, 462 Pa. 202, 340 A.2d 433 (1975); *Commonwealth v. Scoggins*, 451 Pa. 472, 304 A. 2d 102 (1973); *Commonwealth v. Stafford*, 451 Pa. 95, 301 A.2d 600 (1973); *Commonwealth v. Ponton*, 450 Pa. 40, 299 A.2d 634 (1972). There is no reasonable basis to conclude that this same requirement is not also necessary

to insure that the consulting adult is in fact aware of the rights possessed by the minor.

■ Traditionally, we have held that the burden rests upon the Commonwealth to establish an effective waiver. *Commonwealth v. Boone,* 467 Pa. 168, 354 A.2d 898 (1975); *Commonwealth v. Romberger,* 464 Pa. 488, 347 A.2d 460 (1975); *Commonwealth v. Goodwin,* 460 Pa. 516, 333 A.2d 892 (1975); *Commonwealth v. Ewell,* 456 Pa. 589, 319 A.2d 153 (1974); *Commonwealth v. Ravenell,* 448 Pa. 162, 292 A.2d 365 (1972); *Commonwealth v. Taper, supra.* As a corollary to this principle we have held that the prosecution must not only demonstrate that the warnings were given but also that the accused manifested an understanding of these rights. *Commonwealth v. Bullard, supra; Commonwealth v. Ritter, supra; Commonwealth v. Scoggins, supra; Commonwealth v. Stafford, supra; Commonwealth v. Ponton, supra.* Applying this fundamental principle to the instant situation it necessarily follows that the Commonwealth must establish on the record that the adult did in fact comprehend the rights possessed by the minor. Since there is no evidence in this case to establish such a finding, this fact, of itself, justifies the conclusion that the asserted waiver is ineffective.

Lastly, this alleged waiver is also ineffective because the minor was not in fact provided an opportunity for consultation. The Commonwealth's position erroneously focuses upon the opportunity afforded the adult. They assumed that the parent's disinterest can be translated into a waiver by a minor. This assumption completely misconstrues both the Fifth and Sixth Amendment privileges and the objectives sought to be achieved by our case law. These rights are personal to the accused and therefore may only be waived by him, not the adult. Providing an opportunity for consultation with an adult seeks to insure that the juvenile is provided a means by which he can make an informed choice with respect to

his rights.[10] Here, the opportunity to confer was denied because of Mr. Miller's unilateral decision not to participate.

The factual situation posited in this appeal is clearly distinguishable from that presented in *Commonwealth v. McFadden*, 470 Pa. 604, 369 A.2d 1156 (filed January 1977). McFadden was arrested at or about 4:30 A.M. at his residence. After being informed of his *Miranda* rights in the presence of his mother,[11] he was then hand-cuffed to a chair and left with his mother in the living room of their residence for a period in excess of ten minutes while the officers searched the home. *During this period of time the mother and son were allowed to freely converse out of the hearing of the officers.* Under those facts, the majority of this Court held that the opportunity to consult with an interested adult had been provided.[12]

The facts of the instant case are more similar to our recent opinion in *Commonwealth v. Gaskins*, 471 Pa. 238, 369 A.2d 1285 (filed February 28, 1977), wherein we held that an opportunity was not provided for consultation. In *Gaskins*, there was some testimony to indicate that appellant's mother was told, prior to his departure for the Police Administration Building, that she could accompany him. The police testified that she declined this offer because of the need to care for the younger chil-

10. Under these facts, we need not reach the question of whether, if given the opportunity to consult with an interested, concerned and informed adult, a minor would be permitted to decline the offer and thereafter make an effective waiver. *See, Commonwealth v. Webster*, 466 Pa. 314, 326 n.5, 353 A.2d 372, 378 n.5 (1976).

11. In this case it appears that not only were the warnings read but the police made a reasonable effort to ascertain that they were understood. Additionally, the police advised mother and son of the nature of the charges and the name and the residence of the victim.

12. In *McFadden*, no challenge was raised as to the interest of the parent. Additionally, Mrs. McFadden did follow her son to the Police Administration Building and also attempted to secure counsel for him.

dren at home. The police officers also testified that she was given a phone number where her son could be reached at the Police Administration Building. However, the mother made no attempt to contact her son either prior to or during the interrogation. The Court held that even accepting this testimony, the circumstances nevertheless did not meet the requirement that a minor be provided an opportunity to consult.

The *McFadden* case is distinguishable from the facts of *Gaskins* and the instant appeal in that Mrs. McFadden and her son were in fact given a period of time to discuss the situation between them. In *Gaskins* and in this case no such opportunity was afforded. In *Gaskins* the mother declined to accompany her son because of her responsibility to the other children at home. Here appellant was effectively prevented from a meaningful consultation because of his "father's" indifference. It is therefore clear that the similarity to the *Gaskins* factual situation and the dissimilarity to *McFadden* mandate the conclusion that the *Gaskins* rationale be employed here.

Under our formulation, failure by the Commonwealth to establish either the adult was one interested in the welfare of the juvenile accused, that the adult was aware of the rights of the accused, or that the minor had an opportunity to consult, would justify the conclusion that the purported waiver was ineffective. In this instance, the Commonwealth did not establish any of the three pre-requisites necessary to prove waiver. We are therefore constrained to conclude that the statement should have been suppressed.

The judgments of sentence are reversed and a new trial awarded.

Former Chief Justice JONES took no part in the consideration or decision of this case.

MANDERINO, J., joined the opinion of the Court and filed a concurring opinion.

POMEROY, J., filed a dissenting opinion in which EAGEN, C. J., joined.

MANDERINO, Justice, concurring.

I join the majority opinion and agree that appellant's statement should have been suppressed because the prosecution failed to show that he had effectively waived his constitutional rights prior to giving that statement. I would like to add, however, that in addition to the three pre-requisites discussed by the majority opinion, the prosecution must show that meaningful consultation between the juvenile and the interested and informed adult actually took place.

The majority summarizes the first three parts of the test to be applied to determine whether a juvenile has validly waived his constitutional rights as follows:

"Under our formulation, failure by the Commonwealth to establish either the adult was one interested in the welfare of the juvenile accused, that the adult was aware of the rights of the accused, or that the minor had an opportunity to consult, would justify the conclusion that the purported waiver was ineffective."

Initially, I agree with the majority that the prosecution must show that the adult involved was *interested* in the juvenile's welfare; that the "father" in this case, did not measure up to that standard; and that appellant's "waiver" was ineffective for that reason alone.

Secondly, I agree with the majority that the prosecution must establish that the adult was *informed* as to the juvenile's constitutional rights and, I would add, the prosecution must show that the adult was aware of the consequences of the juvenile's waiver of those rights. Although the requirement of an awareness of the consequences of a waiver is not explicitly stated in the majority's "formulation" as quoted above, it is implicit in earlier portions of the majority opinion. Again, appellant's

"waiver" was ineffective because the prosecution failed to establish this part of the test.

I also agree with the majority that the prosecution must show that the juvenile had an opportunity to consult with an adult who meets the first two portions of the test, and that appellant's "waiver" was ineffective because the prosecution failed to establish this prong of the test.

I believe, however, that the constitutional rights of a juvenile accused can be adequately protected only if it is *also* shown that meaningful consultation actually took place. Only after actual consultation can it be said that the juvenile's immaturity did not place him at a "unique disadvantage in the custodial interrogation process." Any less stringent standards would allow the court to rule that a juvenile's "waiver" was effective so long as the prosecution (having proved points one and two of the "formulation") showed simply that the juvenile and the adult advisor sat together, *even if it were also shown that they did not speak to each other*. To allow such a result would be tantamount to accepting the conclusion —expressly disavowed by the majority opinion—that the inquiry as to the effectiveness of the juvenile's "waiver" ends when it is shown that the formal pre-requisites have been met. Only by requiring that meaningful consultation actually take place can we begin to assure that the juvenile has, *in fact*, comprehended the situation.

POMEROY, Justice, dissenting.

This Court has recently evolved a new formula for assuring the voluntariness of confessions by juvenile suspects.[1] The purpose of this rule is to ensure that the juvenile has the ability to "understand the full implica-

1. The majority opinion refers to this new rule as a "technique which would avoid the warning of a juvenile becoming a mere ritual wherein the effect of actual comprehension is ignored."
3. Opinion of the Court at 800.

tion and consequences of . . . [his] predicament" and has sufficient judgment "to assess the spectrum of considerations encompassed in the waiver decision." Opinion of the Court, at 800.

While one can only applaud the motivation of the Court in seeking to ensure the voluntariness of juvenile confessions admitted at trial, it has seemed to this writer and other members of the Court that the new approach is unnecessarily protective and overly paternalistic.[2] Today's decision further highlights the difficulties which this rule creates for our criminal justice system in the area of juvenile crimes.

In this case the majority concludes that the appellant, who was 17 years old at the time of his arrest, "did not receive the requisite protections envisioned in our recent case law," [3] and accordingly holds that his confession should have been excluded from evidence. Three separate reasons are advanced as compelling this conclusion, any one of which, according to the majority, would have been sufficient to resolve this case:

(1) The Commonwealth failed to prove that Barry Smith's father, who was informed by the police of his son's constitutional rights, was an adult who was "interested" in his son's welfare. Implicit in this portion of

**2.** See *Commonwealth v. Stanton,* 466 Pa. 143, 351 A.2d 663, 667 (1976) (dissenting opinion of Pomeroy, J.); *Commonwealth v. Webster,* 466 Pa. 314, 353 A.2d 372, 379 (1976) (dissenting opinion of Pomeroy, J.); *Commonwealth v. Chaney,* 465 Pa. 407, 350 A.2d 829, 831 (1975) (dissenting opinion of Pomeroy, J., joined by Jones, C. J., and Eagen, J.); *Commonwealth v. Riggs,* 465 Pa. 208, 348 A.2d 429, 431 (1975) (dissenting opinion of Pomeroy, J.). The gravamen of these dissents is that the traditional test of the voluntariness of a waiver of constitutional rights by a juvenile in the light of all the circumstances surrounding the waiver, including the age of the suspect and his opportunity for guidance by a concerned adult, adequately protects youthful defendants. See, *e. g., Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972); *Commonwealth v. Darden,* 441 Pa. 41, 271 A.2d 257 (1970), *cert. denied,* 401 U.S. 1004, 91 S.Ct. 1243, 28 L.Ed.2d 540 (1971); *Commonwealth v. Moses,* 446 Pa. 350, 287 A.2d 131 (1971).

**3.** Opinion of the Court at 800.

the Court's discussion is the assumption that a parent who does not accompany his child to the police station is, *ipso facto*, not "interested" in him;

(2) The Commonwealth failed to prove that Smith's father understood the constitutional rights possessed by his son;

(3) The Commonwealth failed to prove that Smith waived his right to consult with an interested adult before he made the confession here involved.[4]

The first and third of these propositions, at least, are novel even under the per se rulings of our recent cases. Their necessary consequence in many situations will be to preclude any police questioning of a juvenile. Where no sufficiently "interested" adult is nearby at the time a minor is arrested, the police must locate a suitable mentor for their suspect. Furthermore, this new rule, requiring the Commonwealth to show that a minor had an opportunity to consult with a concerned adult before making a confession, merely substitutes the judgment of an adult for that of the minor. It is no guarantee that a subsequent waiver by the minor of his rights is truly voluntary. Circumstances are easily imaginable where a minor who would not otherwise cooperate with the police will do so on the advice of a parent who, although aware of the nature of the minor's rights, nevertheless advises him to tell the police the truth.[5] The only way to pre-

---

4. One may inquire how the minor could effectively reject such an opportunity, which the majority has invested with due process significance, when by hypothesis he is unable to make a valid waiver of his other constitutional rights regarding interrogation without the guidance of a concerned adult.

5. See *Commonwealth v. Starkes*, 461 Pa. 178, 335 A.2d 698 (1975) where the minor's mother, who was admittedly uninformed (at least by the police) of her son's constitutional rights, advised him "to tell the truth." The majority's reversal on the ground that she had not been so informed might be called a holding that a minor is entitled to the effective assistance of a parent.

In addition, I fail to see how a ten minute conversation between a child and parent in a proper environment will necessarily serve to fortify the minor against police interrogation which

vent this is to inquire also into what advice is actually given by the adult and then pass judgment on whether that advice helped the juvenile do what was best for himself in that situation. Are we to say that the nature and content of a consultation between a minor and a parent or other adult are to be examined by a suppression court, that the soundness of the advice given must be evaluated and the validity of the confession determined in the light of such findings? If so, a new and, I submit, unnecessary avenue of inquiry will be opened without any corresponding improvement in the ability of the court to fulfill its function of determining the voluntariness of a juvenile confession.

Finally, the majority here once more fails to explain why a youth of seventeen years of age is always entitled to more protection than is a youth of eighteen, or even as much as is a child of far more tender years.[6]

In sum, I adhere to the belief that *some* minors in *some* circumstances are capable of effectively waiving their constitutional rights without the advice of any adult and that no purpose is served by a per se rule which excludes from evidence a confession made by any juvenile whether or not the traditional test of voluntariness would mandate such exclusion.

EAGEN, C. J., joins in this dissenting opinion.

might otherwise prompt a confession. See *Commonwealth v. McFadden,* 470 Pa. 604, 369 A.2d 1156 (1976).

6. *Commonwealth v. Stanton,* 466 Pa. 143, 351 A.2d 663, 664 (1976) (dissenting opinion by Chief Justice Jones).