462 A.2d 736

**COMMONWEALTH of Pennsylvania**

v.

**Raynard GREEN, Appellant.**

Superior Court of Pennsylvania.

Submitted April 13, 1982.

Filed June 17, 1983.

Kenneth Dean Chestek, Erie, for appellant.

Michael J. Veshecco, District Attorney, Erie, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

JOHNSON, Judge:

This is an appeal from the order of Common Pleas Court, Erie County denying the Post Conviction Petition of appellant, Raynard Green. We now affirm.

Appellant was a juvenile when he was convicted by a jury of burglary [1] and first degree murder.[2] A sentence of life

1. 18 Pa.C.S.A. § 3502.

2. *Id.* § 2502.

imprisonment was imposed upon appellant. On April 25, 1980, the Supreme Court of Pennsylvania affirmed judgment of sentence.[3] Subsequently, appellant and new counsel petitioned for relief under the Post Conviction Hearing Act[4] alleging the ineffectiveness of trial counsel. An evidentiary hearing into the allegations set forth in appellant's petition was conducted on May 5, 1981. By order dated June 3, 1981, appellant's petition was dismissed, prompting this appeal.

Three allegations of trial counsel's ineffectiveness are presented for our review. They are: (1) whether trial counsel's failure to move to suppress appellant's confession was ineffective assistance of counsel; (2) whether trial counsel's failure to object to testimony from which the jury could infer that appellant had a prior criminal record was ineffectiveness of counsel; and (3) whether trial counsel was ineffective for failing to object at trial and argue on direct appeal that the question asked of a defense witness by the trial judge was prejudicial error.

Before embarking upon our consideration of the issues raised by appellant's allegations of ineffectiveness, we must first set forth the traditional two step analysis we will employ in determining whether appellant received ineffective representation. Our initial focus will be to determine whether the issues underlying appellant's allegations are of arguable merit. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). Should we conclude that appellant's allegations of ineffectiveness have arguable merit, we must proceed to determine whether trial counsel's action or inaction was supported by a *reasonable basis* designed to effectuate appellant's interests. *Commonwealth v. Musi,* 486 Pa. 102, 404 A.2d 378 (1979). Trial counsel will be deemed ineffective if the underlying issue is of arguable

**3.** *Commonwealth v. Green,* 488 Pa. 611, 413 A.2d 651 (1980).

**4.** Act of January 26, 1966, P.L. 1580, (1965) § 1 *et seq.,* 19 P.S. § 1180–1 *et seq.* repealed and reenacted by Act of May 13, 1982, P.L. 417, No. 122, § 3 immediately effective, 42 Pa.C.S.A. § 9541 *et seq.*

merit and he lacked a *reasonable basis* for his action or inaction.

## I.

◼ Appellant's first allegation of ineffectiveness concerns trial counsel's failure to seek the suppression of inculpatory statements allegedly made by appellant to the Erie Police. Appellant advances four separate arguments as to why the statements were suppressible. They are: (1) that the statements employed at trial were suppressible because they were not his statements; (2) that he did not waive his Constitutional rights; (3) that the Commonwealth did not comply with the "interested adult" rule; and (4) that the Commonwealth violated his right to counsel when it conducted an interrogation after an assertion by his mother that she wanted counsel present. Where counsel has failed to move for suppression of evidence and the claim of inadmissibility would not have been frivolous, counsel will not be deemed ineffective if there is a reasonable basis for his action. *Commonwealth v. Williams,* 304 Pa.Super. 351, 450 A.2d 716 (1982).

The circumstances surrounding the acquisition of the statements herein were described at appellant's trial by Detective Dickie Russell and subsequently, at the P.C.H.A. hearing by appellant. Detective Russell testified that appellant was arrested at his home on April 26, 1978. Appellant testified that upon arrest the police informed him of his *Miranda* [5] warnings in the presence of his mother. Appellant was taken to the Erie Police station alone. He testified that his mother stayed behind to try and secure an attorney for him. Upon arrival at the police station, appellant was placed in a room on the first floor until the police could secure the presence of an adult for appellant's interrogation. Shortly thereafter, appellant's 21 year-old sister, Theresa Green, arrived. Upon her arrival, appellant was transferred to another room in the police station for interro-

---

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

gation after a five minute interval. The record does not reveal whether appellant and his sister were together during this five minute period of time. The detective testified that once relocated to the other room, appellant and his sister were both informed of his *Miranda* rights, and that both acknowledged their awareness of his rights and indicated their willingness to talk to the police. In contrast, appellant testified that his *Miranda* warnings were not given to him at any time while he was at the police station. Detective Russell testified that both appellant and his sister signed a waiver form; however, it was stipulated at the P.C.H.A. hearing that only appellant's sister had actually signed the waiver form.

Detective Russell testified that in the early stages of the interrogation, appellant's sister would volunteer answers to his questions before appellant was able to answer. He went on to testify as to what appellant had said during the interrogation. Appellant testified in a conflicting fashion at the P.C.H.A. hearing, first acknowledging that he made statements to the police and later maintaining that he did not. The detective also testified that Theresa elicited from appellant an admission, in the presence of police officers, that he killed the victim.

To resolve the conflicts in the evidence, we note that the hearing judge found appellant's testimony at the P.C.H.A. hearing to be "blatantly false". With this in mind, we turn to examine appellant's arguments for suppression.

Appellant's first argument deserves only short mention. We have examined the record and find that it belies the claim that the Commonwealth's own testimony indicated that the statements read at trial were not appellant's. While Detective Russell testified that in the early part of the interrogation that appellant's sister would volunteer answers to the questions posed to appellant, in other portions of the detective's testimony, he recalled what appellant had said to him and, at times, his recollections purported to be verbatim accounts of what appellant had said.

N.T. October 18, 1978 at 148 and 158. This argument lacks merit.

The gist of appellant's second and third arguments is that appellant did not knowingly and intelligently waive his *Miranda* rights. First, he contends that his *Miranda* warnings were not given to him before the interrogation began and that he did not waive those rights. Second, he contends that the Commonwealth failed to comport with the "interested adult" rule.

It is settled law that a waiver of *Miranda* rights must be explicit, for it will not be presumed. *Commonwealth v. Christmas*, 281 Pa.Super. 114, 421 A.2d 1174 (1980). Moreover, the waiver must be knowing and intelligent before it is effective. *Miranda v. Arizona, supra.* A knowing and intelligent waiver exists if a defendant has made inculpatory statements after he has been read his Constitutional rights and has acknowledged his understanding of them. *See Commonwealth v. Peoples*, 483 Pa. 152, 394 A.2d 956 (1978). In the case of a juvenile accused, Pennsylvania has adopted a *per se* rule that the Commonwealth must establish that the juvenile accused was afforded an opportunity to consult with an adult, interested in the welfare of the juvenile, who has been fully apprised of the juvenile's Constitutional rights, before any purported waiver by the juvenile may be considered effective. *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977).

Appellant's assertion that he was not warned of his *Miranda* warnings and did not waive his rights deserves only short mention. Contrary to appellant's assertions, the trial testimony of Detective Russell indicates that appellant and his sister were both read appellant's rights. Both acknowledged their understanding of those rights and indicated a willingness to cooperate with the police. While appellant apparently did not sign a waiver form, as did his sister, a written waiver is not necessary for us to conclude that appellant waived his rights. *U.S. v. Stuckey*, 441 F.2d 1104 (3rd Cir.1971); *Commonwealth v. Cost*, 238 Pa.Super.

591, 362 A.2d 1027 (1976); *Commonwealth v. Keysock*, 236 Pa.Super. 474, 345 A.2d 767 (1975). Since there is credible evidence of record that appellant was given his *Miranda* warnings and explicitly waived them, this argument also lacks merit.

We next consider appellant's contention that the Commonwealth failed to comport with the "interested adult" rule because Theresa Green was not an interested adult and, even if she was an interested adult, appellant never had an opportunity to meet with her without the presence of police officers.

We agree with appellant that the record is devoid of proof that appellant and his sister were permitted to confer privately before appellant made inculpatory statements. However, the record clearly establishes that appellant's sister, with knowledge of his rights, was present throughout his interrogation. In two recent cases this court has held that the mere presence of an informed, interested adult during custodial interrogation is sufficient to comport with the requirement of an "opportunity for consultation" despite the absence of privacy. *Commonwealth v. Williams*, 309 Pa.Super. 63, 454 A.2d 1083 (1982); *Commonwealth v. Rochester*, 305 Pa.Super. 364, 451 A.2d 690 (1982). Accordingly, we conclude that appellant has been afforded a sufficient opportunity for consultation to comport with the interested adult rule.

As to appellant's claim that Theresa Green was not the interested adult envisioned by the rule, we are of the view that it must also be rejected.

Appellant argues that Theresa demonstrated by her conduct that she did not have appellant's interests at heart. Specifically appellant refers to her having signed a waiver form and having encouraged appellant to answer questions and admit that he killed the victim in the presence of police.

Our case law has to a limited degree expounded upon the requirement that the adult providing advice to the juvenile accused must have a genuine interest in the juve-

nile's welfare. Interested adults are usually persons of blood relationship (e.g. parents) or attorneys who professionally represent the juvenile accused. *See Commonwealth v. Thomas*, 486 Pa. 568, 406 A.2d 1037 (1979). The requisite concern for the welfare of the juvenile is assumed to be present when a person of blood relationship is consulted. However, that assumption is not justified where the disinterest of the blood relative is "graphically demonstrated". *Commonwealth v. Smith, supra.* (father's refusal to come to the police station graphically demonstrated his indifference to the juvenile accused's plight.)

Theresa, at least facially, comports with the requirement of being concerned with the welfare of appellant by virtue of her blood relationship to appellant. We find no evidence in the record that her relationship with her brother was anything other than a loving one. There is no evidence that she was indifferent toward her brother, comparable to that in *Commonwealth v. Smith, supra.* Nor was there any evidence of extraneous concerns that might supplant her concern for the welfare of her brother. *See Commonwealth v. Christmas, supra.*

We are not persuaded by appellant's argument that Theresa was not an interested adult because she signed a waiver and encouraged appellant to admit his guilt. Her signature on the waiver form did not operate to waive appellant's rights, it merely memorialized her understanding of appellant's rights. We note also that appellant has not cited us to legal authority holding that a blood relative may not suffice as an "interested adult" if after being informed of the juvenile's rights the adult encourages the juvenile to cooperate with the police.[6]

In sum, we believe that appellant has been afforded an adequate opportunity to consult with an interested adult.

6. *Compare Commonwealth v. Starkes*, 461 Pa. 178, 335 A.2d 698 (1975) (where our supreme court held that before a parent may entreat the minor to respond to questions of police, the parent must at least be informed of the minor's rights).

The last of appellant's arguments supporting suppression concerns whether the Commonwealth violated appellant's right to counsel by interrogating him after his mother allegedly asserted his right to have counsel present.

This argument rests upon appellant's P.C.H.A. testimony, which the hearing judge found to be "blatantly false". We therefore are constrained to reject appellant's argument because his testimony was not believed.

■ Even if we were in agreement with appellant that his statements could have been suppressed for one of the reasons he alleged, we still could not deem trial counsel to be ineffective because his tactical decision to employ appellant's statement to corroborate his defense strategy of voluntary intoxication/diminished capacity had a reasonable basis.

The record establishes that trial counsel discussed the statement with appellant on numerous occasions, N.T., P.C.H.A. at 6, 7, and 10, and that appellant acquiesced in the proposed defense strategy until his P.C.H.A. petition was filed.

Trial counsel developed his defense strategy at trial with testimony from various witnesses that described appellant's conduct months before the crime. They testified that appellant would experience periods of total loss of self-control due to emotional instability. That on these occasions, appellant was violent, and often lost any recollection of what happened. Trial counsel attempted to show by testimony of defense witnesses that at the time of the murder, appellant suffered one of these periods, which was caused by, or the effect of which was augmented by appellant having voluntarily ingested alcohol, two purple microdots (a mild hallucinatory drug) and having smoked marijuana. However, appellant's statement was the only method of linking his strategy to the crime, short of calling appellant as a witness. In this respect, counsel was able to argue from the facts in appellant's statement that appellant lacked the requisite criminal intent for first degree murder. In his

closing, counsel referred to portions of appellant's statement to indicate that appellant's conduct was irrational, and that appellant had suffered a memory lapse. Counsel emphasized to the jury that these were characteristic of appellant when he had experienced one of his violent periods. By employing the statement, trial counsel was able to place direct evidence in front of the jury that appellant had voluntarily become intoxicated and he was able to indicate, as well, the degree of appellant's intoxication by detailing what appellant had ingested. This evidence was corroborated by the perceptions of other witnesses. We are of the view that the statement had exculpatory value to appellant's defense.

In *Commonwealth v. Hill*, 450 Pa. 477, 301 A.2d 587 (1973), our supreme court held that a trial counsel's failure to suppress a confession that was exculpatory in nature was not ineffectiveness, for counsel's decision was supported by a "reasonable basis." In light of the holding in *Hill*, our finding that appellant's statement had exculpatory value is sufficient to refute appellant's claim of ineffectiveness. Appellant, however, argues that the use of the statement was unreasonable because the statement was incriminating and inflammatory.

In *Commonwealth v. Goosby*, 461 Pa. 229, 336 A.2d 260 (1975) our supreme court held that counsel's decision not to suppress a defendant's statement was supported by a reasonable basis even though part of the statement inculpated the defendant and another part exculpated defendant. We note additionally that we are unimpressed by appellant's arguments. Appellant acquiesced in the decision to employ the defense strategy of diminished capacity/voluntary intoxication and has not challenged on appeal trial counsel's decision to present this defense. In electing to employ this defense, appellant conceded that he committed the criminal acts that resulted in the death of the victim. *See Commonwealth v. Blair*, 491 Pa. 499, 421 A.2d 656 (1980); *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976).

Thus appellant's argument is deprived of its persuasive force.

Inasmuch as appellant's suppression arguments lack merit and we find trial counsel had a reasonable basis for his tactical decision to employ appellant's statement in his defense, we conclude that trial counsel did not render ineffective representation to appellant.

## II.

Appellant next argues that trial counsel was ineffective for failing to object during trial to references elicited from a defense witness from which the jury could infer that appellant had been involved in prior criminal activity.

The references referred to by appellant occurred during the testimony of Theresa Green. During cross-examination she blurted out that appellant had been in a "group home". N.T., October 18, 1978 at 184. Then in response to the district attorney's questions, she said that appellant went to "New Castle." N.T. October 18, 1978 at 186. On redirect examination, the witness responded to a question from trial counsel by saying that appellant "did something ... they sent him right to the group home." N.T. October 18, 1978 at 201. Later in redirect, the witness blurted out that appellant "got in some trouble." N.T. October 18, 1978 at 201. On recross-examination, the district attorney asked the witness directly "did [appellant] go to New Castle because he had been into some difficulty?" N.T., October 18, 1978 at 205. Trial counsel objected. The trial judge ruled that the district attorney may ask the question as long as he did not get into the specific crimes. Later in recross-examination, the witness stated in response to the district attorney's questions, that she did not know whether the trouble she had referred to was the reason he was sent to New Castle. N.T., October 18, 1978, at 208-9.

As a general rule, error occurs if a testimonial reference indicates to the jury that the accused has been involved in prior unrelated criminal activity; but where this

court is convinced beyond a reasonable doubt that the error did not contribute to the verdict, we may hold that reversal is not required because the error was harmless. *Commonwealth v. Weakland,* 273 Pa.Super. 361, 417 A.2d 690 (1979). In the instant case, the jury could reasonably infer that appellant had engaged in prior criminal activity, however, that inference was rendered harmless in light of the overwhelming evidence of appellant's guilt presented by the Commonwealth. *Id.; see also Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

This allegation of ineffectiveness lacks arguable merit.

### III.

 In support of the diminished capacity/voluntary intoxication defense, trial counsel called Dr. Frank Pizzat to testify. Appellant's third allegation of ineffectiveness concerns trial counsel's failure to object to a question directed to Dr. Pizzat by the trial judge.

The issue herein arose from the following testimony:
Defense counsel: Doctor, could you tell me what effect drugs or alcohol would have on these self-controlling functions?
Doctor: They would very likely reduce the self-controlling functions so that the impulse and the feelings could be very directly expressed, depending upon the extent of the loss of such control. In other words, how much had been ingested or how much had been imbibed and other provoking circumstances in my judgment, the defendant could behave in a way that he would not behave rationally under those circumstances.

. . . . .

The Court: Well, Doctor, if anybody took drugs and alcohol to excess, it would reduce their self-controlling functions wouldn't it?
Doctor: Yes, it would, Your Honor.
N.T. October 18, 1978 at 231–32.

It is settled law that a trial judge has the inherent right, and at times, the duty to question witnesses to clarify

existing facts and to elicit new information. *Commonwealth v. Brown,* 438 Pa. 52, 265 A.2d 101 (1970). However, the questioning may not be done in a protracted or biased manner. *Commonwealth v. Lanza,* 228 Pa.Super. 300, 323 A.2d 178 (1974). Here, the trial judge exercised his right to question Dr. Pizzat. The obvious purpose of the trial judge's question was to clarify the doctor's testimony so as to aid the jury in assessing its import. This purpose is proper. *See Commonwealth v. Miller,* 442 Pa. 95, 275 A.2d 328 (1971); *Commonwealth v. Whyatt,* 235 Pa.Super. 211, 340 A.2d 871 (1975).

Appellant argues that the trial judge committed error by propounding this question. Appellant asserts that the trial judge's question lessened the favorable effect of Dr. Pizzat's testimony and, as such, signalled to the jury that the trial judge thought the defense was frivolous.

Our examination of the record does not convince us that the trial judge's single question had the effect of negating appellant's defense.

Even if the jury were to get the impression from the question and response that the court challenged Dr. Pizzat's testimony, the trial judge's charges were sufficient to eliminate any such impression. In its charge to the jury, the court said the following:

> Now, you heard the evidence in regard to intoxication and drugs and *it's for you to say.* Maybe he was sober, maybe he wasn't, maybe he was slightly intoxicated and could still form the criminal intent. Maybe he wasn't. *All of this is for you. . . .*

N.T. October 18, 1978 at 285. Regarding the testimony of Dr. Pizzat the trial judge told the jury that it "must judge [Dr. Pizzat's testimony] along with all of the other evidence in this case." N.T., October 18, 1978, at 287. Finally, the trial judge instructed the jury that: "[t]he credibility of the witnesses is entirely for you. *I have nothing to say as to whom you will or will not believe.*" N.T., October 18, 1978, at 288. These instructions from the trial judge were

sufficient to alert the jury that it and it alone had to decide the merit of appellant's defense.

Appellant's third allegation of ineffectiveness lacks merit.

## Conclusion

For the foregoing reasons, we affirm the order denying appellant P.C.H.A. relief.