Commonwealth *v.* Ponton, Appellant.

Argued November 12, 1971; reargued May 2, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused February 9, 1973.

*F. Emmett Fitzpatrick, Jr.,* with him *Joseph Michael Smith,* and *Fitzpatrick & Smith,* for appellant.

*James D. Crawford,* Deputy District Attorney, with him *Maxine J. Stotland* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, November 17, 1972:

Shortly after midnight on May 28, 1967, the dead body of Catherine McMenamin was discovered lying on

the ground near Roxborough High School in Philadelphia. The appellant, Withers Ponton, was later indicted for her murder, and after a jury trial was found guilty of murder in the first degree. On this direct appeal from the judgment of sentence of life imprisonment, three issues are raised.[1]

First, appellant contends that a statement made by him to the police and introduced at trial over objection was made without adequate warning of his constitutional right to free counsel if he were indigent, *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966); therefore, he argues, he could not have made a knowing and intelligent waiver of that right. Before being interrogated or giving any statement to the police, appellant was read the following warning from the standard police interrogation card: "If you cannot afford to hire a lawyer, and you want one, we will see that you have a lawyer provided to you before we ask you any questions."[2] In order to ascertain appellant's understanding of this right, the interrogating officer then asked "Do you understand that if you cannot afford to hire a lawyer, and you want one, we will not ask you any questions until a lawyer is provided for you?" Appellant answered "Yes", thereby unequivocally acknowledging his understanding of the warning as presented.

Without specifying the precise words to be used, the United States Supreme Court in *Miranda* held that ". . . it is necessary to warn [the accused] not only

---

[1] This case was first argued November 12, 1971. We later ordered reargument, which was had May 2, 1972.

[2] The Commonwealth informs us in its brief that since the date when Ponton was given his warnings, the District Attorney's office in Philadelphia has modified its warning card to provide explicitly for the right to "free" counsel. The adoption of this new mode of expression cannot, of course, affect our view of the constitutionality of the challenged warning.

that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him." 384 U.S. at 473. Where, as here, the explanation used by the police very clearly expresses the *Miranda* warning and the accused responsively acknowledges his understanding of this explanation, we can detect no deviation from the holding or the intent of the *Miranda* decision. While there may occur cases where a warning, adequate on its face, is in fact not understood, or where a seemingly adequate warning is not in fact genuine, this is not such a case.

Appellant would have us hold that any warning in which the accused is not told that he may have counsel "free of charge" is constitutionally inadequate. Although concerned with the right to free counsel on appeal, as distinguished from trial, the various opinions of this Court in *Commonwealth v. Freeman,* 438 Pa. 1, 263 A. 2d 403 (1970) indicate there is no magic in the phrase "free of charge". While it may be good practice to include that phrase in the warning, all that is constitutionally required is that an indigent accused be informed that if he has insufficient funds to retain a lawyer, a lawyer will be provided for him. That standard was clearly satisfied in this case. See also, *Commonwealth v. Knuckles,* 448 Pa. 463, 275 A. 2d 653 (1971); *Commonwealth v. Franklin,* 438 Pa. 411, 415, 265 A. 2d 361 (1970).

The facts in *Commonwealth v. Marsh,* 440 Pa. 590, 271 A. 2d 481 (1970), are sufficiently dissimilar so that it cannot be considered controlling here. Though we held in *Marsh* that warnings like those in the present case were inadequate, there was an added element in that case; the issue was not only the adequacy of the warning, but also whether Marsh *"was aware* of all his rights". (Emphasis added.) 440 Pa. at 596. Since here the appellant unquestionably did have awareness

of his right to free counsel, we hold that his present challenge to the warning as given is without merit.

Appellant next asserts that the evidence adduced at trial was insufficient to support a verdict of first degree murder. "[T]he test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial, or both—is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." *Commonwealth v. Frye,* 433 Pa. 473, 481, 252 A. 2d 580 (1969). See also, e.g., *Commonwealth v. Chasten,* 443 Pa. 29, 31, 275 A. 2d 305 (1971); *Commonwealth v. Commander,* 436 Pa. 532, 538, 260 A. 2d 773 (1970).

The testimony at trial warranted the jury in finding the following: On the evening of May 27, 1967, Miss McMenamin, forty-three years old, four feet four inches in height and with a developmental age of ten years, was driven by her brother to a movie theatre, which she entered by herself. After the movie, at approximately 10:30 P.M., the deceased went to a neighborhood tavern in the company of appellant, who is six feet tall and weighs 164 pounds. They had a few drinks, and played shuffle bowling on a pinball machine. The deceased was observed to place a Pall Mall cigarette, offered her by appellant, into her purse. The couple left the bar together at approximately 11:15 P.M.

Around midnight appellant was next seen walking alone about fifty feet from the entrance to the Roxborough High School grounds. He was apparently dressed in the same light shirt he had worn in the bar earlier in the evening. Half an hour later, a disheveled body, later determined to be that of Miss McMenamin,

was discovered lying on the ground near the High School, a pack of Pall Mall cigarettes nearby. The victim's face was covered with lacerations and abrasions, her skirt was hiked above her knees, and, as it was determined upon later examination, semen stains marked her underclothes. At 2:00 A.M., appellant approached another tavern in the Roxborough area. The tavern keeper said appellant looked as though he had been in a fight and was wearing a bloodstained "T" shirt. At about 3:45 A.M., appellant was discovered walking on a highway in the neighborhood by two policemen answering a call that there was a hospital case on the highway. Appellant had blood on his "T" shirt and blood on his hands and face.

Appellant later made a statement to the police, the voluntariness of which is discussed above, containing an admission that he had hit the decedent in the face after she refused his advances. Dr. Marvin Aronson, Assistant Medical Examiner of the City of Philadelphia, testified unequivocally that the victim died from "blunt injuries of the face" and anoxia (an insufficiency of oxygen), and that the manner of death was homicide. He gave it as his opinion that, because of the deceased's diminutive size, the anoxia could have been caused by someone lying on top of the victim with his chest over her face. Tests from the crime laboratory showed that the blood found on appellant's "T" shirt matched that of the deceased and differed from his own. They also established that appellant's undershorts were stained with semen.

We have no hesitancy in concluding that the evidence summarized above amply supports the verdict of first degree murder, whether as a willful, deliberate and premeditated killing or as a killing which occurred in the course of an attempted rape by appellant upon the victim, i.e., a felony-murder.

Appellant's final contention is that the trial judge committed reversible error in his charge by directing the jury not to consider voluntary manslaughter as a possible verdict. Whatever may be the merits of this contention under other circumstances,[3] the point has here been waived. At the close of the testimony the defense had demurred to a separate voluntary manslaughter bill of indictment, and the demurrer had been sustained. Presumably this was a deliberate tactic on appellant's part to enhance the chances of a verdict of acquittal by removing the opportunity for a compromise manslaughter verdict. Appellant cannot charge the court with error when the propriety of conviction for voluntary manslaughter had been removed from the case by his own motion.

Judgment of sentence affirmed.

Mr. Chief Justice JONES and Mr. Justice MANDERINO join in the opinion of the Court.

----

CONCURRING OPINION BY MR. JUSTICE EAGEN:

In *Commonwealth v. Marsh*, 440 Pa. 590, 271 A. 2d 481 (1970), we were confronted with the issue presented in the present case, namely, whether constitutional due process was violated at trial by the admission into evidence of incriminating statements made by the defendant during police questioning. We pointed out in *Marsh* that for the statements to be admissible it was necessary for the Commonwealth to first establish Marsh was given adequate warnings of his constitutional rights as mandated by *Miranda v. Arizona*, 384

----

[3] See *Com. v. Arcuroso*, 283 Pa. 84, 128 A. 668 (1925) ; *Com. v. Banks*, 447 Pa. 356, 364, 285 A. 2d 506 (1971) (dissenting opinion of Mr. Justice POMEROY) ; *Com. v. Matthews*, 446 Pa. 65, 285 A. 2d 510 (1971) (dissenting opinions of Mr. Justice ROBERTS and Mr. Justice POMEROY).

U.S. 436, 86 S. Ct. 1602 (1966), and also that Marsh understood and intelligently waived these rights before the police questioning began which culminated in the challenged statements.

In *Marsh* the record disclosed the only warning given to the defendant concerning his right to the assistance of counsel during the police questioning was as follows: "he [Marsh] was told that he had the right to an attorney and if he could not afford one, one would be obtained for him." 440 Pa. at 596. We ruled this warning without more failed to adequately apprise Marsh of the fact that the attorney would be provided without charge in case he was indigent, and, therefore, the trial court erred in admitting the statements in evidence.

The writer of the instant concurring opinion also wrote the majority opinion in *Marsh* and since the *Marsh* decision has experienced grave concern as to whether the reason given in the opinion for excluding the statements was correct. I am still of the view the warnings therein were inadequate since they clearly, in themselves, were insufficient to bring home to Marsh the fact that he had the right to assistance of counsel during the police questioning. The warnings were unclear on this point and could reasonably have been interpreted by Marsh to mean that counsel would be provided at the time of trial. If Marsh did not clearly understand his right to have the assistance of counsel during the police questioning, he could not intelligently waive this important right and as to this right the record was barren with the exception of the warning given as detailed before. Unfortunately, this view was not expressed in the majority opinion. Nonetheless, error should not be compounded.[1]

---

[1] As Mr. Justice STORY, in accounting for his contradiction of one of his former opinions, said, "My own error, however, can fur-

In the instant case Ponton was warned as follows before the questioning began: "If you cannot afford to hire a lawyer, and you want one, we will see that you have a lawyer provided to you before we ask you any questions." Unlike *Marsh,* this warning was adequate to inform Ponton of his right to have counsel during the police questioning. However, the question still remains, were the warnings sufficient to inform Ponton such assistance would be provided without charge to him in the event he were indigent. Mr. Justice POMEROY concludes the warnings given were adequate in this respect, and I agree.

It is unquestionably correct that before police questioning, the accused must be warned of his constitutional rights in understandable terms. The minority reason that in order to apprise an accused of the right under discussion, the warning must say the lawyer will be provided "free of charge." I see no magic in these particular words and believe that to some individuals, even these words would not be understandable or sufficient to fully apprise them of their rights.

By this, I do not intend to denigrate the objectives of *Miranda.* But, *Miranda* only holds that the required warnings be given to the accused in a manner that *he* can understand. The critical question in this case is, were the words used such that Ponton could understand and did he responsively indicate such an understanding. I believe the record supports the conclusion of the trial court that the words were sufficiently clear for Ponton to understand his rights.

Mr. Chief Justice JONES joins in this concurring opinion.

---

nish no ground for its being adopted by this Court." *United States v. Gooding,* 12 Wheaton 460, 478, 6 L. Ed. 693 (1827).

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I dissent from the opinion of the majority for the reason that I do not believe that the warnings given to appellant prior to questioning were sufficient to inform him fully of his constitutional rights.

It is admitted that before appellant's statement was obtained, he was told by the police that "if you cannot afford to hire a lawyer, and you want one, we will see that you have a lawyer provided to you before we ask you any questions." Appellant argues that the statement did not adequately inform him of his constitutional right to free counsel if he were indigent and, therefore, he could not have made a knowing and intelligent waiver of such right.

We accepted a very similar argument in the case of *Commonwealth v. Marsh*, 440 Pa. 590, 271 A. 2d 481 (1970). In *Marsh*, the defendant ". . . was told that he had the right to an attorney and if he could not afford one, one would be obtained for him." Id. at 596.

The Commonwealth seems to argue that although appellant was not specifically told that he would be provided with counsel "free of charge" if he could not afford to hire counsel, that was the only reasonable interpretation of the warning actually given to him. According to the Commonwealth, we should not require that an appellant be told that "he would not have to pay for the counsel for whom he could not pay."

However, it does not help the Commonwealth's position for us to agree that the warnings given to the appellant can reasonably be interpreted to mean that, if he cannot afford the services of a lawyer, the costs of the lawyer provided to him will be borne by the Commonwealth.

Our decision in *Marsh* was based on a desire to insure that the defendant's constitutional rights were clearly made known to all defendants, including those

who were wholly uneducated, capable only of a most rudimentary understanding of English. It is for this reason that we held in *Marsh* that on the basis of the warning given in that case, "we are not persuaded that this, in itself, fully apprised Marsh of his right to the assistance of counsel without charge if he were indigent." *Commonwealth v. Marsh, supra,* at 596.

This Court's decision in *Marsh* was in direct accord with both the explicit language and the underlying philosophy of *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). In discussing the content of the necessary warnings, the United States Supreme Court cogently stated: "The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warnings of the right to remain silent and of the general right to counsel, *only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it.* . . . [I]f police propose to interrogate a person *they must make known to him* that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation." (Emphasis added.) Id. at 473, 474, 86 S. Ct. at 1627, 1628. This language makes it clear that what is constitutionally required is more than a mere formal recital of what a defendant's constitutional rights are during in-custody interrogation. The Supreme Court made it mandatory that "only by effective and express explanation to the indigent" could the police "make known" his constitutional right and thereby assure "that he was truly in a position to exercise it." In accord with the language and dictate of *Miranda* is the ABA Project on Minimum Standards for Criminal Jus-

tice, Standards Relating to Providing Defense Services, §7.1 (Approved Draft 1968), which states: ". . . The offer should be made in *words easily understood,* and it should be stated expressly that one who is unable to pay for adequate representation is entitled to have it provided *without cost to him. . . ."* (Emphasis added.)

To insure this constitutional objective of a knowing and intelligent decision by the defendant, the Supreme Court in *Miranda* explicitly required the application of federal standards for determining waiver to custodial interrogations: "This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458 (1938), and we reassert these standards as applied to in-custody interrogation." Id. at 475, 86 S. Ct. at 1628.

It follows inexorably from *Miranda* and *Johnson v. Zerbst,* 304 U.S. 458 (1938), that before a defendant can waive a constitutional right to free counsel during custodial interrogation, he must be advised of that right "by effective and express explanation."

I am unable to make the distinction which the majority makes between *Marsh* and the instant case. The only essential difference in the two cases is that in *Marsh,* the defendant was told that if he could not afford counsel, counsel would be "obtained for him," while in the case at bar, the defendant was told that if he could not afford to hire a lawyer, one would be "provided." I see nothing in either case which would indicate an understanding on the part of the defendant that the lawyer "obtained" or "provided" would be compensated by the Commonwealth and not the defendant. If *Marsh* was wrongly decided, a view which I do not hold, it should be overruled rather than attempting to distinguish that case from the instant case, where the factual situations present what I believe to be a distinction without a difference.

Furthermore, this case appears to be even stronger than *Marsh*. Here, the police who were doing the questioning advised appellant that if he wanted a lawyer, *"we* will see that you have a lawyer provided to you before *we* ask you any questions." (Emphasis supplied.) One in the appellant's position might well have concluded that a lawyer provided by the police would be of little value to one being questioned by the police. Consequently, I believe that the warning, in addition to making clear that the attorney to be provided will be provided without cost to the defendant, should also make clear that which is made clear by Rule 318 of the Rules of Criminal Procedure, i.e., that it is the *court* which will provide counsel, not the police.

The majority holds that the warning was adequate because appellant said that he understood it. However, the record does not indicate just what it was the appellant understood. It does not indicate that he understood that he was entitled to free counsel or that such counsel would be appointed by the court. Since I believe that the warning was insufficient to convey this information clearly, I believe that the strong possibility exists that appellant's understanding was also insufficient to support a finding that he knowingly waived his rights. I would vacate the judgment of sentence and remand the case for a new trial.

Mr. Justice ROBERTS and Mr. Justice NIX join in this dissenting opinion.