395 A.2d 1376

COMMONWEALTH of Pennsylvania

v.

**Robert J. SWEITZER, Appellant.**

Superior Court of Pennsylvania.

Submitted April 10, 1978.

Decided Dec. 20, 1978.

184

186

Ralph T. Forr, Jr., Assistant Public Defender, Altoona, for appellant.

Donald E. Speice, Assistant District Attorney, Altoona, for Com., appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

Appellant contends that the lower court erred in denying him relief after a hearing under the Post Conviction Hearing Act ("PCHA").[1] Specifically, appellant claims that his trial counsel was ineffective because he did not (i) appeal appellant's convictions for two armed robberies, (ii) file any motion to suppress evidence obtained pursuant to appellant's allegedly unlawful arrest, (iii) object to a witness' testimony that he was appellant's parole officer, and (iv) object to a police officer's reference to appellant's photograph being on file with the local police department. Appellant further

1. Act of January 25, 1966, P.L. 1580, § 1 et seq.; 19 P.S. § 1180–1 et seq.

claims that he was denied fair trials on two armed robbery charges because the juries could see him handcuffed and behind bars. Lastly, appellant contends that he was denied due process because the notes of testimony from one of his two robbery trials were unavailable.[2] Because we find all of appellant's contentions without merit, we affirm the lower court's order denying him relief.

On May 23, 1973, Altoona police arrested appellant on charges relating to the February 11, 1973 armed robbery at the Sheetz Kwik Shopper and the May 20, 1973 armed robbery at the Skat gas station. On October 11 and 12, 1973, after separate jury trials, the lower court found appellant guilty of the two robberies. On October 15, 1973, the lower court sentenced appellant to two consecutive terms of imprisonment of three and one-half to seven years each on the two convictions for armed robbery.[3] Appellant filed no post-verdict motions or direct appeals. William Haberstroh, Esquire, a court-appointed attorney, represented appellant throughout the proceedings of both armed robbery cases.

On March 16, 1976, appellant filed a *pro se* PCHA petition for relief. On May 6 and June 10, 1976, the lower court held a hearing on appellant's petition; the Public Defender office of Blair County represented appellant at the PCHA hearing and on this appeal therefrom. Testimony from the PCHA hearing reveals the following relevant facts:

A) Concerning his failure to appeal his convictions directly, appellant testified that his attorney Haberstroh and the trial court advised him of his appeal rights concerning both convictions and that Haberstroh further advised him that he saw no reason to appeal either case. Appellant claimed that he told Haberstroh to appeal both cases "on the circumstan-

---

**2.** Appellant also contends that he was denied due process because the post-conviction hearing court took one year to dispose of his petition after the hearing. He filed a pro se writ of habeas corpus to that effect on May 16, 1977; on May 19, 1977, the lower court denied that writ without a hearing. In this appeal, counsel for appellant cites no cases for this claim, and we find no merit in it.

**3.** Act of June 24, 1939, P.L. 872, § 705 (repealed June 6, 1973) (now Act of June 24, 1976, P.L. 425, No. 102 § 1).

tial evidence" and "took it for granted that he did appeal it on that." Appellant presented copies of two letters, written for him by a fellow inmate at Blair County Prison, which requested Haberstroh to appeal both cases and which, he claimed, were sent to Haberstroh within 30 days after sentencing. Appellant further testified that because he was dissatisfied with Haberstroh's representation of him at the trial he wanted Haberstroh only to appeal the convictions and not to represent him in future matters.

Haberstroh willingly admitted that he advised appellant that he saw no grounds for appeal. However, he testified that appellant never advised him to take appeals and had, in fact, agreed with his advice not to appeal. Haberstroh denied receiving the two letters proffered by appellant and produced other letters from appellant, sent to him after the armed robbery convictions, in which appellant requested his help at a future parole revocation hearing, made no mention of appeals of his robbery convictions, and which, unlike appellant's proffered letters requesting appeals, were addressed to Haberstroh's correct address. Testimony of the record keeper of Blair County Prison indicated that appellant and the inmate who wrote the two letters to Haberstroh requesting appeal for appellant were not in the same prison at the alleged time the letters were written.

B) Concerning the unavailability of a transcript of the Skat trial, appellant testified that he requested transcripts of both robbery trials within 90 days of his sentencing in 1973, did not receive them, made another request in 1975, and then received the Sheetz trial transcript and a letter from the prothonotary that the stenographer's notes to the Skat trial were lost and no transcript could be made of that case. He indicated that the unavailable transcript would show that Kenneth Wertz identified himself as appellant's parole officer in the Skat trial; he admitted that no one referred to any pre-trial identification of him, by photograph, line-up or otherwise, at the Skat trial. The stenographer testified that no one requested the Skat trial transcript until 1975, by which time her notes had been lost. In

attempting to reconstruct the events of the Skat trial, Haberstroh and Trooper Meyers, the prosecuting officer of the Skat armed robbery who made contemporaneous notes of all witnesses at that trial, testified unequivocally that Wertz did not testify at all during the Skat trial; Wertz himself could not remember. Haberstroh further testified that no physical evidence or statement of appellant was introduced at the Skat trial.

C) Concerning the legality of appellant's arrest, Wertz and four police officers testified that appellant was arrested on May 23, 1973 for the two armed robberies and not, as appellant claimed, for a parole violation. Police based their arrest of appellant, in major part, upon the oral statements of Mrs. Lennie Otto, appellant's then girlfriend. In her statement to police concerning the Skat robbery, she implicated appellant and confirmed certain information about that robbery which was known only to the police; likewise, her statement concerning the Sheetz robbery implicated appellant, meshed well with the information previously given by two victims of that robbery, and buttressed one eye witness' tentative photographic identification of appellant. The arresting officer testified that, although he did not have the warrants with him when he arrested appellant, he knew that two warrants had been issued for appellant's arrest in connection with the robberies and he arrested appellant for that reason. Appellant and two of his friends testified that police initially arrested him without warrant for a technical parole violation. Appellant also presented evidence that a parole violation hearing was scheduled for May 25, 1973, for failure to maintain employment.

D) Concerning his claim that he was denied fair trials by impartial juries, appellant testified that each day of trial the jurors could see him from the hallway in the "bullpen" of the courtroom, behind bars and handcuffed. Appellant presented no testimony that any juror actually so saw him or that he communicated the alleged problem to his trial counsel.

E) Concerning appellant's claim that Haberstroh was ineffective for not objecting to testimony in the Sheetz trial that Wertz was appellant's parole officer, Haberstroh testified that he did not object to that reference because he wished to use Wertz's testimony to discredit the testimony Lennie Otto had just given. Lennie Otto, appellant's then girlfriend, testified at the Sheetz trial about appellant's actions before and after the armed robbery and his admission that he did the robbery. She had in the past told Wertz that appellant hit her and threatened her with guns, thus violating his parole; as appellant's parole officer, Wertz had investigated and found these accusations unmeritorious. Haberstroh wished to use Wertz's testimony[4] about these prior accusations in order to argue to the jury that Lennie Otto was testifying against appellant out of vindictiveness and that she should therefore not be believed.[5]

Concerning the subsequent reference in the Sheetz trial to photographs of appellant on file in the police department,[6] Haberstroh testified as follows:

4. Our independent review of the Sheetz trial transcript reveals that Wertz first identified himself as appellant's parole officer on direct examination in response to a question from the Commonwealth; Haberstroh did not object and, on cross-examination, purposefully elicited the testimony about Wertz's investigations, as appellant's parole officer of Lennie Otto's previous accusations. At the PCHA hearing, Haberstroh testified that if the Commonwealth had not called Wertz he would have done so himself in order to bring out the same testimony he elicited during his cross-examination of Wertz.

5. Haberstroh was still left with the very strong testimony of Elizabeth O'Donald, a victim and eye-witness to the robbery. O'Donald, who had testified before either Otto or Wertz took the stand, unequivocally identified appellant as one of the two armed robbers at the Sheetz store; Haberstroh's cross-examination of O'Donald failed to "shake" any of her testimony.

6. Specifically, Detective Thomas F. Gibboney, a Commonwealth witness, testified on direct examination in the Sheetz trial: "Well beginning with the initial contact that Detective Alianiello and I had with her [Elizabeth O'Donald] *we run through just about every photograph that we have on file in the Altoona Police Department. . .* I would estimate four hundred (400) pictures." (emphasis added). It is clear from *O'Donald's prior testimony at that trial, that she singled out appellant's photograph from those the police showed her.*

"A. . . . It could only be prejudicial if it was a reference to a prior arrest and, of course, in that *Sheetz* case, Mr. Wertz testified as being his Parole Officer so I didn't see any real need to try to avoid the fact that Mr. Sweitzer [appellant] had prior contact with the law."

On June 7, 1977, the lower court denied appellant any relief under PCHA. This appeal followed.

 Before reviewing appellant's specific contentions, we note initially that, in general, a PCHA petitioner has the burden of establishing his grounds for post-conviction relief. *See Commonwealth v. Logan,* 468 Pa. 424, 364 A.2d 266 (1976); *Commonwealth ex rel. Johnson v. Rundle,* 440 Pa. 485, 270 A.2d 183 (1970). In particular, the burden of establishing ineffectiveness of trial counsel is on appellant. *See Commonwealth v. Barnes,* 248 Pa.Super. 579, 375 A.2d 392 (1977). The PCHA court has discretion to disbelieve testimony; thus, self-serving or uncorroborated statements on petitioner's behalf do not shift and do not necessarily sustain petitioner's burden of proof, even when the Commonwealth presents no rebuttal evidence. *See Commonwealth v. Grandy,* 212 Pa.Super. 438, 243 A.2d 188 (1968). In *Commonwealth v. Sullivan,* 472 Pa. 129, 145, 371 A.2d 468, 476 (1977), our Supreme Court stated that "[t]he findings of the PCHA court, which hears the evidence and passes on the credibility of the witnesses, should be given great deference. . . . Consequently, this Court will not disturb its findings if they are supported in the PCHA record. . . . This is true even when the record could support a contrary holding." (citations omitted). *See Commonwealth v. Lee,* 478 Pa. 70, 385 A.2d 1317 (1978); *Commonwealth v. Wilder,* 469 Pa. 237, 364 A.2d 1357 (1976); *Commonwealth v. Minnick,* 432 Pa. 462, 247 A.2d 569 (1968); *Commonwealth v. Wright,* 232 Pa.Super. 470, 334 A.2d 766 (1975).

Appellant first contends that his trial counsel was ineffective for failing to appeal his two armed robbery convictions and sentences. We disagree.

When the trial record is silent on the question of notice and waiver of appeal rights, the burden is on the Commonwealth to prove that the petitioner received notice and knowingly and intelligently waived his right to appeal. See Commonwealth v. Skurkis, 165 Pa. 257, 331 A.2d 894 (1975); Commonwealth v. Yarbough, 248 Pa.Super. 356, 375 A.2d 135 (1977); Commonwealth v. Henderson, 231 Pa.Super. 190, 331 A.2d 824 (1974). In the instant case, we have no transcript of any of the Skat trial proceedings or of any colloquy on appeal rights in the Sheetz trial. However, appellant admitted that both Haberstroh and the trial court informed him of his appeal rights in both armed robbery cases. Instead, appellant contends that Haberstroh knew he was supposed to appeal both robberies and Haberstroh neither appealed nor filed an Anders brief to withdraw.[7] The PCHA court believed Haberstroh's testimony that appellant in fact agreed with his assessment that no appeal should be taken and never advised Haberstroh to take appeals. Appellant's testimony was self-serving and contradicted by letters in Haberstroh's possession written by appellant. Other testimony suggested that appellant manufactured the two letters requesting Haberstroh to appeal. Our review of the record reveals no reason to overturn the PCHA court's finding that appellant had notice of his appeal rights and never requested Haberstroh to appeal. Accordingly, we hold that he knowingly and intelligently waived all those issues which he could have raised on appeal.[8]

7. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

8. Appellant does not claim that he relied on his trial counsel's advice not to appeal or that trial counsel had no reasonable basis for such advice. If he did so claimed, and proven his claim, then we would find that he did not knowingly and intelligently waive his rights. See Commonwealth v. Holmes, 468 Pa. 409, 364 A.2d 259 (1976); Commonwealth v. McCutchen, 245 Pa.Super. 56, 369 A.2d 291 (1976). In fact, however, appellant alleges neither what grounds Haberstroh could have raised on direct appeal nor that such grounds would have been meritorious. Accordingly, we need decide only the issue of notice of appeal rights, and we need not review the original trial proceedings to determine whether Haberstroh had some reasonable basis for his assessment that there were no grounds for appeal.

As a result, appellant has waived his claim that he was denied fair trials because his juries could see him handcuffed and behind bars. Because he does not claim that his trial counsel was ineffective for not objecting to or not appealing that issue and does not allege any other extraordinary circumstance for his failure to bring that issue up on direct appeal, he has waived it. *See Commonwealth v. Fox,* 476 Pa. 475, 383 A.2d 199 (1978); *Commonwealth v. Skurkis, supra; Commonwealth v. Phillips,* 248 Pa.Super. 400, 375 A.2d 158 (1977).

■ Appellant's claim that the Commonwealth denied him due process by failing to provide him a transcript of the Skat trial must also fail. The evidence, credited by the PCHA court and supported by the record, supports the conclusion that appellant did not in fact make a timely request for such transcript.[9]

■ Appellant's remaining claims of ineffective assistance of counsel concern evidence obtained pursuant to an allegedly illegal arrest and references to his parole officer and to photographs of him on file with the local police. Testimony of various witnesses at the PCHA hearing, including appellant, sufficiently reconstructed the Skat trial to conclude that no such evidence or references were made there.[10] Hence, appellant's remaining ineffectiveness claims relate only to the Sheetz trial.[11]

9. *See* Act of May 1, 1907 P.L. 135, § 2; Act of May 5, 1911 P.L. 161, § 1; Act of June 1, 1959 P.L. 340, § 1; Act of January 8, 1960 P.L. 2116, § 1; 17 P.S. § 1802.

10. In *Commonwealth v. Anderson,* 441 Pa. 483, 272 A.2d 877, 882 (1971), our Supreme Court stated that "while a transcript per se is not an absolute due process necessity, there must be an equivalent 'picture' of what transpired below." The court may use credible testimony of persons present at the proceedings to reconstruct events at trial and need not believe petitioner's version. *Commonwealth v. Wright, supra,* 232 Pa.Super. at 476, 334 A.2d at 769 (1975).

11. Appellant did not waive his remaining claims of ineffective trial counsel by his failure to appeal those claims directly because it would be unrealistic to expect trial counsel to raise his own ineffectiveness on appeal and the PCHA hearing was appellant's first opportunity to raise those issues with new counsel. *See Common-*

Appellant contends that his trial counsel was ineffective for not filing any motions to suppress evidence obtained pursuant to his allegedly illegal arrest. Our independent review of the Sheetz trial transcript reveals that no evidence was introduced at trial which could be said to be the fruit of his arrest.[12] Furthermore, the testimony of several witnesses, properly credited by the lower court, amply supports the conclusion that the police had probable cause to arrest appellant for the two armed robberies and did so.

Lastly, appellant contends that his trial counsel was ineffective for failing to object to two references indicating prior criminal activity, i. e., that Wertz was his parole officer and that his photograph was on file with the local police. We conclude that his trial counsel's actions with respect to those references did not amount to ineffective assistance of counsel.

Our Supreme Court in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967) defined the standard for constitutionally effective assistance of counsel:

" . . . [C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed

wealth v. Mabie, 467 Pa. 464, 359 A.2d 369 (1976); Commonwealth v. Dancer, 460 Pa. 95, 331 A.2d 435 (1975); Commonwealth v. Foster, 250 Pa.Super. 32, 378 A.2d 438 (1977); Commonwealth v. Olsen, 247 Pa.Super. 513, 372 A.2d 1207, 1211 (1977); Commonwealth v. Hawkins, 240 Pa.Super. 56, 362 A.2d 374 (1976). In addition, we note that in 1973, when appellant could appeal his convictions directly, ineffectiveness of counsel was properly raised in collateral hearings. See Commonwealth v. Glasco, 241 Pa.Super. 484, 362 A.2d 420 (1976); Commonwealth v. Brown, 217 Pa.Super. 190, 269 A.2d 383 (1970). Thus all of appellant's remaining contentions concerning ineffectiveness of trial counsel are properly before us.

12. No physical evidence or confession was introduced at trial. Appellant's contention that a counselled line-up identification of him made one week after his arrest is a fruit of his arrest is without merit. Furthermore, the record reveals that the circumstances of that identification were not unduly suggestive or otherwise improper and that the in-court identification had an independent basis.

to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." (footnotes omitted). It is normally prejudicial error to admit evidence, whether direct or by implication, of other crimes because, except under special circumstances, it is not proof that an accused committed the crime for which he is being tried, and it is so prejudicial, as tending to show the accused has a bad character, that it strips the accused of the presumption of innocence. *See Commonwealth v. Roman,* 465 Pa. 515, 523, 351 A.2d 214, 218 (1976); *Commonwealth v. Groce,* 452 Pa. 15, 19, 303 A.2d 917, 919 (1973). Usually, the prejudicial impact of such evidence upon a jury "cannot be considered insignificant." *Commonwealth v. Harkins,* 459 Pa. 196, 200, 328 A.2d 156, 157–58 (1974). Our Courts have held that admission of references, including those to police photographs, from which the jurors can reasonably infer that the accused has engaged in prior criminal activity, is error requiring a new trial, unless the judge gives an effective cautionary instruction to the jury. *See Commonwealth v. Williams,* 470 Pa. 172, 368 A.2d 249, 252 (1977); *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972). There will rarely be a time when the introduction of such evidence will produce a result favorable to the accused; when an accused's own trial counsel purposefully elicits testimony of other crimes from the accused, in order to "steal the thunder" from the Commonwealth's revelation of such crimes on cross-examination, our Supreme Court has held such action unreasonable when, in fact, the Commonwealth could not introduce the accused's other crimes as impeachment evidence. *Commonwealth v. Zapata,* 455 Pa. 205, 314 A.2d 299 (1974). However, even when the Commonwealth cannot properly use an accused's other crimes, there may be situations where defense counsel may reasonably have the accused admit to those other crimes, in order to buttress the credibility of the accused's testimony concerning the crime

for which he stands trial. *See Commonwealth v. Reidenbaugh* (filed July 12, 1978). Moreover, we have, on occasion, found the erroneous admission of other crimes evidence to be harmless beyond a reasonable doubt. *See Commonwealth v. Seigrist,* 253 Pa.Super. 411, 385 A.2d 405 (1978) (other overwhelming evidence); *Commonwealth v. Jones,* 233 Pa. Super. 52, 61, 335 A.2d 444, 448 (1975) ("The complainant was positive and unshaken in his identification of appellant as the perpetrator of this senseless shooting; appellant himself used his prior criminal involvement as an alibi to establish that he was in the courthouse when the crime was committed; and the trial judge carefully cautioned the jury as to the proper weight to be given any evidence of prior criminal activity.") [13]

In the instant case, appellant's trial counsel Haberstroh allowed Kenneth Wertz to testify that he was appellant's parole officer and did not object to a police officer's subsequent reference to appellant's photograph being on file in the police department.[14] Because he did not put appellant on the stand, Haberstroh's purpose in not objecting could not be to "steal the thunder" from the Commonwealth's cross-examination of appellant or to enhance appellant's credibility. Nor did he attempt to establish an alibi for appellant through Wertz's testimony. In fact, Haberstroh rested the defense immediately after the Commonwealth rested its case. Instead, Haberstroh stated that he wanted to use Wertz's testimony to discredit that of Lennie Otto, appellant's then girlfriend, who testified about appellant's actions on the day of the Sheetz robbery and about appellant's admissions that he did the robbery. Haberstroh felt that he had not at all shaken the prior testimony of an eye-witness

13. *See Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978) for an analysis of the harmless error standard.

14. The Commonwealth does not argue that the jury could not reasonably infer from those references that appellant had previously engaged in criminal activity. From our independent review of the trial record, we also conclude that the jury could so reasonably infer.

to that robbery.[15] Lennie Otto's testimony buttressed the already unshakable evidence against appellant. Thus, by discrediting Lennie Otto's testimony, Haberstroh hoped to reduce the Commonwealth's credible evidence against appellant to the testimony of one, albeit unequivocal, eye-witness; this was certainly a proper course of action to take. Given the prejudice to his client that the revelation of other cries might produce, we may seriously doubt the wisdom of the strategy Haberstroh used.[16] However, our inquiry is limited to determining whether he had some reasonable basis for using references to other crimes to impeach Lennie Otto's credibility, or, put another way, whether it was at all reasonable for Haberstroh to think that the potential benefit to be derived from his chosen strategy outweighed the potential prejudice. We cannot say, in light of all the circumstances, that Haberstroh had no reasonable basis for his decision. As an appellate court, we are especially reluctant to overturn the findings of a trial court, the PCHA court, which examined appellant's challenges to his counsel's trial strategy and found that strategy to have some reasonable basis. It

15. From our independent review of the trial record, we agree with Haberstroh's assessment.

16. Haberstroh's most revealing testimony in the PCHA hearing occurred when asked why he did not put Wertz on the stand in the Skat robbery trial (which occurred the day before the Sheetz trial), where Lennie Otto was the Commonwealth's only witness, and not an eye-witness, linking appellant to that robbery:

"A. I did not use Mr. Wertz in the Skat trial basically because of the allegations that you now make as to the impropriety of using him, that I felt in cross examination I could impeach or discredit to some degree Mrs. Otto's testimony. There was nothing else to tie Mr. Sweitzer to the Skat robbery except Mrs. Otto's testimony, and in my judgment and in the trial of that case, I felt that if I attempted to discredit her by using Mr. Wertz it was obviously going to put before the jury his prior record by inference and I didn't want to do that. In the Sheetz case, I felt at that point in time it was a situation to pull out all stops to argue to the jury that it was a situation where Mrs. Otto brought all this up just to strike back at Mr. Sweitzer and I did that because of the fact that I felt that the Commonwealth had an ironclad case and I had no alternative except to do everything that I felt. Secondly, when the jury convicted him in the Skat case, I was convinced without any question that we didn't have a chance of winning the Sheetz case."

follows that trial counsel's failure to object to a police officer's subsequent and passing reference to appellant's police photograph was, at worst, harmless error.

Order affirmed.

HOFFMAN, J., did not participate in the consideration or decision of this case.