## Commonwealth v. Ponton

*Steven R. Geroff*, for petitioner.
*Drew Barth*, for respondent.

GAFNI, *J.,* February 27, 1981—Defendant, Withers Ponton (Ponton), was arrested in 1967 and charged with homicide and related crimes connected with the killing of a young, retarded woman. The court appointed two counsel to represent him, the late Maximillian J. Klinger, Esq., and Stanley Bluestine, Esq.

After Ponton waived his right to a jury trial, the assistant district attorney certified that the homicide did not rise higher than second degree murder, with a maximum penalty of ten to 20 years. The trial began on December 10, 1968 before the Honorable Herbert S. Levin and was recessed for four days after two days of testimony had been taken.

On December 16, 1968 Ponton returned to the courtroom after the recess and informed his attorneys that he wished to terminate his waiver trial and be tried before a jury. He said he was acting on the advice of "jail-house lawyers" with whom he had spoken while being confined at Holmesburg Penitentiary during the recess. Mr. Klinger then advised the court of his client's desire, and Judge Levine declared a mistrial. Although all parties

agree that a court stenographer was present, no transcript of the December 16, 1968 proceedings presently exist.

A jury trial presided over by the Honorable James T. McDermott began on June 23, 1969, F. Emmett Fitzpatrick, Esq. having replaced Mr. Bluestine and Mr. Klinger as court-appointed defense counsel.

After the Commonwealth rested its case, Mr. Fitzpatrick demurred generally to all of the charges against defendant. The court thereupon removed the manslaughter charges from consideration by the jury.

On July 1, 1969 Ponton was found guilty of first degree murder and subsequently sentenced to life imprisonment. The judgment of sentence was affirmed in 1972 by the Supreme Court of Pennsylvania: Com. v. Ponton, 450 Pa. 40, 299 A. 2d 634 (1972).

In July, 1977 Ponton filed a petition for relief under the Post Conviction Hearing Act (PCHA) of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180-1 et seq. An amended petition was filed in July, 1978. Ponton's PCHA application was denied by this court on August 14, 1979, from which order the present appeal was filed.

The issues presented by the petition to this court were whether petitioner had been denied effective assistance of counsel at both his first and second trials and, therefore, should be discharged from custody or, in the alternative, be granted a new trial. The alleged ineffective assistance of counsel is based on four issues: (1) counsels' failure at the first trial to conduct a colloquy with defendant to determine if his withdrawal of the jury trial waiver was made intelligently, knowingly, and with an

awareness of the consequential loss of certification of second degree murder; (2) counsel's failure at the second trial to move the court to bind the district attorney to that certification; (3) counsel's failure at the second trial to hold an on-the-record colloquy to ascertain if petitioner's withdrawal of the jury trial waiver was voluntary and intelligent; and (4) counsel's successful demurrer at the second trial to counts of involuntary and voluntary manslaughter foreclosing the return of a verdict of these lesser charges by the jury.

I. Was trial counsel at the first trial ineffective in failing to conduct a colloquy concerning the withdrawal of the jury trial waiver?

The first issue raised by defendant would appear to have been waived. The general rule relating to timely preservation of an allegation of ineffective assistance of counsel is that it must be raised at the earliest stage of the proceedings when the allegedly ineffective attorney is no longer representing defendant: Com. v. Seachrist, 478 Pa. 621, 387 A. 2d 661 (1978). In this case, petitioner was represented by two attorneys at the aborted waiver trial. Thereafter, a third attorney was appointed to be his counsel at the jury trial. This attorney also served as defendant's counsel for his appeal to the Pennsylvania Supreme Court. This issue of the first attorney's ineffectiveness was not raised at any stage by the new counsel.[1] No extraordinary circumstance has been shown that would justify the failure to raise this issue on direct appeal: Com. v. McNeil, 479 Pa. 382, 388 A. 2d 707 (1978). The issue has

---

1. Petitioner has not raised the question of his second counsel's ineffectiveness for failing to preserve this particular issue at the appellate level.

consequently been waived: Com. v. Seachrist, supra.

Moreover, even if this issue had been preserved, this court would find that trial counsel during the first trial had not been ineffective when judged by the tests of effectiveness in this Commonwealth. In Com. ex rel. Washington v. Maroney, 427 Pa. 599, 604, 605, 235 A. 2d 349, 352, 353 (1967), the Supreme Court defined the standard for constitutionally effective assistance of counsel:

". . . [C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." (Emphasis in original.) (Footnote omitted.)

See, also, Com. v. Sweitzer, 261 Pa. Superior Ct. 183, 395 A. 2d 1376 (1978); Com. v. Foley, 269 Pa. Superior Ct. 71, 409 A. 2d 68 (1979). Thus, we must examine the record before us to determine, insofar as possible, what occurred at the original proceedings and whether decisions made by counsel were reasonable in light of the circumstances at that time.

This court has the discretion to believe or disbelieve evidence presented at a post-conviction proceeding. It may attempt to reconstruct the original trial or trials by reliance on the credible testimony of the participants. In this process, consequently, it

may accept part or none of petitioner's version of events: Com. v. Sweitzer, supra.

Testimony was heard on this issue at the PCHA hearing from all of the participants in the original proceeding except, of course, Mr. Klinger, who is now deceased. Petitioner testified that he had been convinced by fellow inmates to demand a jury trial; that he had so informed Mr. Bluestine and Mr. Klinger; that Judge Levin asked him if this was what he wanted to do, and that he answered in the affirmative; and that no one, prosecutor, judge or counsel, informed his at any time that he would be subjecting himself to prosecution for first degree murder by withdrawing his jury waiver.

Judge Herbert S. Levin testified that he had no recollection of withdrawal of the waiver because no transcripts existed that would allow him to refresh his recollecton. However, he further testified that he had accepted many withdrawals of jury waivers when he sat as calendar judge and that his invariable practice was to engage in a colloquy to be sure that a defendant understood all of the consequences of his action.

William J. Stevens, Assistant District Attorney, testified that he was the prosecutor in Ponton's first and second trials. He said that both he and Judge Levin had made it emphatically clear to defendant that the withdrawal of his waiver would result in a loss of certification and would expose him to a possible death penalty.

Moreover, testimony by Mr. Bluestine, Ponton's surviving counsel, indicated that a colloquy did take place between the court and petitioner in which Judge Levin advised Ponton of the consequences of the withdrawal. Mr. Bluestine further testified that petitioner had expressed dissatisfac-

tion with his representation by counsel, and that as a result of such dissatisfaction, Mr. Bluestine and Mr. Klinger sought leave from the court to withdraw from the case. Finally, Mr. Fitzpatrick also testified that when he spoke to petitioner in preparation for the second trial, Ponton indicated to him that he was aware that he was giving up the certification in order to get a better verdict.

The court found the testimony presented by the Commonwealth to be credible and persuasive. This testimony established that a colloquy between the court and petitioner did take place and that petitioner was clearly advised and aware of the consequences of his withdrawal of jury waiver, including the Commonwealth's withdrawal of the certification of the case as rising no higher than second degree murder.

It is true that there was no formal colloquy as we understand the term today.[2] Nonetheless, it is clear that petitioner was adequately warned and did have knowledge of the consequences of his act. He cannot blame his counsel for failing to prevent him from acting as he had apparently determined to do. See Com. v. Hampton, 462 Pa. 322, 341 A. 2d 101 (1975). Mr. Bluestine and Mr. Klinger responded reasonably by acquiescing to their client's vehement demand that he withdraw his waiver, after they were satisfied that he understood the consequences of doing so. They cannot, therefore, be held to have been ineffective as counsel because their client insisted on demanding a jury trial after having been informed of the hazards of his course.

II. Was counsel at the second trial ineffective for

---

2. Indeed, we have not been cited to any authority that would indicate that a formal on-the-record colloquy was required in this situation.

failing to bind the Commonwealth to its prior certification?

The Commonwealth argues that the petitioner has waived this second assignment of ineffective assistance of counsel because he failed to raise the issue until his post-PCHA hearing memorandum was filed. We agree with the Commonwealth.

It is true that in paragraph 12(d) of his amended petition, petitioner asserted that he had a right to the certification and that this right could only be knowingly and intelligently waived. However, he did not there assert that failure of counsel to force the Commonwealth's adherence to the certification constituted ineffective assistance of counsel.[3]

Petitioner raised this specific issue only in his memorandum of law, which was filed after the PCHA hearing. Therefore, the claim is waived, because petitioner "by waiting until after the hearing, denied the Commonwealth an opportunity to defend against assertions raised at such a late date. We . . . refuse to consider anything not raised in a counseled petition. See Pa.R.Crim.P. 1506(4)." Com. v. Mitchell, 477 Pa. 274, 280, 281, 383 A. 2d 930 (1978).[4]

---

3. Paragraph 12(e) and (f) of the amended petition reads: "(e) By reason of the above, Petitioner was denied the effective assistance of counsel; (f) by reason of the above, Petitioner was placed twice in jeopardy." This court assumes that these allegations refer generally to the four preceding paragraphs. It is unclear how sections (e) and (f) relate to the statement made in section (d), where it is alleged only that because surrender of the certification subjected the petitioner to a far more severe penalty, such surrender must be made voluntarily.

4. It should be noted as well that petitioner never responded to the Commonwealth's waiver argument although he had the opportunity to do so in a subsequent letter which was filed in response to the Commonwealth's brief.

Even if this claim were not waived, however, this court would not find that Ponton's second counsel had been ineffective in this matter. Petitioner received a certification that he could be convicted of no more than second degree murder. In exchange for this certification, he waived his right to a jury trial, thus saving valuable resources for the judicial system and the district attorney's office. Neither the waiver nor the certification conferred any "right" upon defendant; rather, each side agreed to a bargain from which each was to receive certain benefits. Failure of one party to the agreement to adhere to its terms nullified the bargain and released the other party from its promise. See, e.g., Com. v. Barrett, 223 Pa. Superior Ct. 163, 299 A. 2d 30 (1972). Consequently, when Ponton withdrew from his side of the bargain with the Commonwealth, i.e., his jury trial waiver, he lost his "right" to receive the benefit of that bargain.

Thus, Ponton had no claim of right to his certification after he had withdrawn his waiver. Similarly, he had no basis on which to seek to bind the Commonwealth to its bargain. His attorney will not be held ineffective for failing to pursue a meritless claim: Com. v. Foley, 269 Pa. Superior Ct. 71, 409 A. 2d 68 (1979).

III. Was counsel at the second trial ineffective for failing to conduct an on-the-record colloquy on the issue of petitioner's withdrawal of his jury trial waiver?

Petitioner next asserts that counsel at his second trial was ineffective for failing to conduct an on-the-record colloquy to ascertain if his withdrawal of the jury trial waiver was intelligently and voluntarily done. Pa.R.Crim.P. 1102(c) specifically states that once a waiver of a jury trial has been with-

drawn on the motion of a defendant, "no further waiver shall be permitted." This rule became effective on August 1, 1968, five months before the date of Ponton's aborted first trial. Thus, once Ponton had withdrawn his waiver he was required by the rule to face trial before a jury. An attorney will not be judged ineffective for failing to raise an issue that is clearly without merit: Com. v. Robinson, 452 Pa. 316, 305 A. 2d 354 (1973); Com. v. Davenport, 250 Pa. Superior Ct. 304, 378 A. 2d 948 (1977). Ponton's withdrawal of his waiver was irreversible when his second trial began; a demand for a colloquy would have been a fruitless gesture by his counsel. See, N.T. 18-20 (3/28/79). Petitioner was not thereby denied effective counsel.

IV. Was counsel at the second trial ineffective for successfully demurring to involuntary and voluntary manslaughter charges?

Petitioner's final allegation is that counsel at his second trial decided, without conferring with him, to demur to counts of voluntary and involuntary manslaughter, and that this successful demurrer denied him effective assistance of counsel. Effective representation was allegedly denied in that the petitioner was thereby deprived of the opportunity to be convicted of a lesser charge than murder.

Counsel will not be found to have been ineffective unless there was no reasonable basis for his actions at the time it was taken: Com. v. Connolly, 478 Pa. 117, 385 A. 2d 1342 (1978); Com. ex rel. Washington v. Maroney, supra. In the instant case, the attorney demurred to *all* charges pending against petitioner because he felt that there was insufficient proof of the corpus delecti, of petitioner's presence at the scene of the crime, and of intent. (N.T. 128-133, 6/30/69).

It is clear from the transcript that counsel's primary argument was that there was no malice present such as could justify a murder charge. The trial judge sustained the demurrer as to voluntary and involuntary manslaughter bills, but denied it as to the murder bill. Counsel then argued to the court that although the demurrer was sustained as a separate bill, he believed that an instruction of voluntary manslaughter would have been appropriate to give to the jury as part of its charge on the murder bill. The trial court disagreed, however, and denied his request.[5] Even though another course of action might, in hindsight, have produced different results for petitioner, we cannot say that there was no "reasonable basis designed to effectuate his client's interests" in the above-described decisions of counsel at the time. In fact, the Supreme Court considered this very issue in its opinion affirming Ponton's sentence:[6] 450 Pa. 40, 299 A. 2d 634 (1972). Mr. Justice Pomeroy stated that counsel's demurrer "[p]resumably . . . was a deliberate tactic on appellant's part to enhance the chances of a verdict of acquittal by removing the opportunity for a compromise manslaughter verdict." 450 Pa. at 46. Every course pursued during trial carries with it a certain amount of risk that the consequences will be other than optimum for one's client. An attorney

---

5. It is presently the law in Pennsylvania that a defendant being tried for murder does have a right to a charge on voluntary manslaughter: Com. v. Jones, 457 Pa. 563, 319 A. 2d 142 (1974), cert. denied, 419 U.S. 1000 (1974). However, Jones was decided approximately five years after the instant proceedings took place.

6. Ponton alleged that the trial judge had committed reversible error in his charge to the jury when he directed them not to consider voluntary manslaughter as a possible verdict. The Supreme Court found this contention to be without merit: 450 Pa. at 46.

must not therefore refrain from making all appropriate motions on behalf of his client. We find that counsel at the second trial was not ineffective for presenting a demurrer to all bills open against the petitioner.

This court, having found that counsel was not ineffective in the instances raised by petitioner, denied his petition for post conviction relief.